1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | | |
|---|---|---|
| SONJIA SHEFFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | Case  No. CV14-3582 AJW |
| | ) | |
| v. | ) | MEMORANDUM OF DECISION |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of  Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

### Administrative Proceedings

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2-4].  In a December 11, 2013 written hearing decision that constitutes the Commissioner's final decision in this matter, the ALJ found that plaintiff had severe impairments consisting of osteoarthritis, post-concussive syndrome, prolapsed bladder, and depression, but that she retained the residual functional capacity ("RFC") to perform her past relevant work.  Alternatively, the ALJ found that plaintiff could perform alternative work that exists in substantial numbers in the national economy.  Accordingly, the ALJ

1  found plaintiff not disabled at any time through the date of her decision. [Administrative Record ("AR") 11-
2  26].

3  **Standard of Review**

4  The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial
5  evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.
6  2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than
7  a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.
8  2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
9  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is
10 required to review the record as a whole and to consider evidence detracting from the decision as well as
11 evidence supporting the decision.  Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006);
12 Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than
13 one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."
14 Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.
15 1999)).

16 **Discussion**

17 **Medical opinion evidence**

18 Plaintiff contends that the ALJ erred in rejecting the opinions of treating physician Sovek Boyadjian,
19 M.D. and examining orthopedist Richard Pollis, M.D.  [See JS 13-30].

20 A treating physician's opinion is not binding on the Commissioner with respect to the existence of
21 an impairment or the ultimate issue of disability.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.
22 2001).  Where, however, a treating physician's medical opinion as to the nature and severity of an
23 individual's impairment is well-supported and not inconsistent with other substantial evidence in the record,
24 that opinion is entitled to controlling weight.  Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir.  2001);
25 Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir.  2001); see 20 C.F.R. §§ 404.1527(c)(2),
26 416.927(c)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2.  Even when not entitled
27 to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed"
28 in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and

extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization.  Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.   The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir.  2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831.

**Dr. Boyadjian**

Dr. Boyadjian, a treating physician, completed a "Disability Certificate" dated January 3, 2012 stating that plaintiff was "totally incapacitated" due to severe lower back pain, trapezius myofascial pain, uncontrolled noninsulin dependent diabetes mellitus, osteoarthritis of multiple joints with unstable gait and severe spasms of the lower extremities.  Dr. Boyadjian opined that "[a]t this time [plaintiff] cannot work, [and] she needs medical care."  [AR 427, 428-452].

Plaintiff concedes that Dr. Boyadjian's opinion was not entitled to controlling weight because it lacks "a certain degree of specificity" [JS 13], but she contends that the ALJ did not articulate specific and legitimate reasons based on substantial reasons for rejecting it.  That contention has merit.  The ALJ articulated three reasons for giving Dr. Boyadjian's opinion "limited probative value": (1) it was prepared for workers' compensation purposes; (2) "insufficient objective support has been cited in support of [this] opinion[]"; and  (3) the opinion did not contain a "function by function" assessment of plaintiff's residual functional capacity. [AR 14, 23].

The ALJ's stated reasons for rejecting Dr. Boyadjian's opinion were not legally sufficient.  First, plaintiff contends that Dr. Boyadjian did not examine plaintiff or prepare his report for workers' compensation purposes.  The opinion itself does not suggest it was a workers' compensation report and in any event does not contain any terminology that the ALJ could not "translate" for purposes of the social security disability determination.  See Perez v. Astrue, 831 F. Supp. 2d 1168, 1177 (C.D. Cal. 2011) ("An

3

ALJ may not ignore such opinions but must translate them into corresponding Social Security terminology.") (citing Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002)); see generally Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998) (clarifying that the purpose for which a medical report was obtained does not provide a legitimate basis for rejecting it in the absence of other evidence undermining its credibility).

Second, Dr. Boyadjian cited clinical findings in support of his opinion, and his records include an abnormal MRI study.  The ALJ's conclusory assertion that Dr. Boyadjian's opinion was "not supported by sufficient objective findings . . . does not achieve the level of specificity our prior cases have required . . . .  The ALJ must do more than offer his own conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  Regennitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999) (quoting Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988)); see also Social Security Ruling 96-2p, 1996 WL 374188, *3-*4 ("For a medical opinion to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, it is not necessary that the opinion be fully supported by such evidence. . . . [A] finding that a treating source medical opinion is not supported by medically acceptable clinical and laboratory techniques . . . means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.").  The Commissioner's attempts to remedy this defect in her briefing by citing evidence in the record is unavailing because this court is required "to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."  Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009); see Stout, 454 F.3d at 1054 (stating that the court is "constrained to review the reasons the ALJ asserts" for the denial of benefits and "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (quoting Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)).

Third, a medical opinion may not be disregarded merely because it does not include a function by function RFC assessment; it must still be weighed by applying the relevant factors.  See 20 C.F.R. §§ 404.1513(b), 416.913(b) (explaining what medical reports "should include," and stating that "[a]lthough

4

1  we will request a medical source statement about what you can still do despite your impairment(s), the lack

2  of the medical source statement will not make the report incomplete"); 20 C.F.R. §§ 404.1527(c),

3  416.927(c) (factors considered in weighing medical opinions);   Lester, 81 F.3d at 832-833 ("The

4  Commissioner is required to give weight not only to the treating physician's clinical findings and

5  interpretation of test results, but also to his subjective judgments.").  If the ALJ concluded that the record

6  was incomplete or ambiguous because Dr. Boyadjian did not provide a function-by-function assessment,

7  she could and should have requested one.  See Perez, 831 F. Supp. 2d at 1177 (holding that where a treating

8  physician provided a diagnosis and evaluated industrial causation but did not provide a functional

9  assessment, the ALJ erred in failing "to obtain or at least request an RFC assessment from" that physician

10 before rejecting his opinion).

11        For the foregoing reasons, the ALJ did not articulate specific and convincing reasons based on

12 substantial evidence for rejecting Dr. Boyadjian's treating source opinion.[1]

13        **Dr. Pollis**

14        In April 2013, Dr. Pollis conducted an orthopedic evaluation of plaintiff at the Commissioner's

15 request and also reviewed May 2012 x-ray reports.  He concluded that plaintiff had discogenic disease with

16 low back pain radiating to the lower extremities, and cervical spine pain due to sprain. He opined that

17 plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently from a seated position only;

18 stand and walk two hours in an eight-hour workday with use of a walker only; sit for six hours in an eight-

19 hour workday with appropriate breaks; frequently use the hands and upper extremities; occasionally push

20 and pull with the lower extremities; occasionally bend, stoop, and crouch; never climb, kneel, or crawl; and

21 was precluded from exposure to unprotected heights, moving mechanical parts, and extreme temperatures.

22 [AR 473-483].  Based on plaintiff's abnormal gait, limited mobility, and positive straight-leg raising test,

23 Dr. Pollis determined that plaintiff's use of a walker was medically necessary and that plaintiff required a

24

25        [1]     Having determined that the ALJ did not articulate legally sufficient reasons for rejecting Dr.
26 Boyadjian's testimony, it is unnecessary to consider plaintiff's related contention that the ALJ erred
   in finding that plaintiff had an RFC that fell somewhere in between the least restrictive and most
27 restrictive medical opinions in the record (that is, between light work and "totally incapacitated").
   Plaintiff contends that in taking a "middle ground" approach, the ALJ improperly substituted her
28 own "medical judgment" for that of a physician.

walker to ambulate, but that she could ambulate 25 feet without a walker.  [AR 475, 479].

The ALJ's RFC finding was consistent in many respects with Dr. Pollis's opinion, but the ALJ rejected Dr. Pollis's conclusion that plaintiff had a medical need for a walker. [AR 18-19, 24].  The ALJ acknowledged that Dr. Pollis was a board-certified orthopedist but nonetheless concluded that his opinion was "extreme, based on the objective evidence." [AR 24].  The ALJ reasoned that plaintiff's neurological examination was normal despite Dr. Pollis's assessment of radicular pain, and that there was no evidence that a treating source had prescribed a walker for plaintiff. The only other record evidence that plaintiff used a walker was her testimony during the second administrative hearing in September 2013, when plaintiff appeared using a walker and testified that she used it for standing, walking, and getting in and out of the tub. [AR 70].  Other than that testimony and Dr. Pollis's examination findings, however, the record lacked evidence that plaintiff used, needed, or had been prescribed a walker.  In addition, Dr. Provender, a medical expert who testified during the second hearing and who also was a board-certified orthopedist, testified that plaintiff's positive straight leg-raising test result of 80 degrees was close to normal and that any short fall could have been due to her obesity. [AR 52].  Dr. Provender testified that he saw no medical need for a walker based on the record as a whole. [AR 51].  Therefore, the ALJ provided specific, clear and convincing reasons based on substantial evidence for partially rejecting Dr. Pollis's opinion.  See Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (holding that the ALJ permissibly rejected the opinion of an examining physician whose assessment relied in part on the claimant's use of a nonprescribed wheelchair).

**RFC finding**

In addition to her specific contentions regarding the sufficiency of the ALJ's reasons for his evaluation of the medical opinion evidence, plaintiff contends that the ALJ erred more broadly in finding that plaintiff's RFC fell somewhere in between the least restrictive and most restrictive medical opinions in the record (that is, between "light work" (the RFC assigned by some nontreating physicians) and "totally incapacitated" (Dr. Boyadjian's assessment)). [JS 5-13]. Plaintiff contends that in taking a "middle ground" and finding that plaintiff had an RFC for a range of sedentary work, the ALJ improperly substituted her own "medical judgment" for that of a physician. [JS 7].

Plaintiff is incorrect.  In assessing a claimant's RFC, the ALJ must apply the proper legal standards for evaluating medical opinion evidence.  See 20 C.F.R. §§ 404.1527, 416.927; Lester, 81 F.3d 830-831.

However, "it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545); see SSR 96-5P, 1996 WL 374183, at *1 (stating that "final responsibility for deciding issues such as" an individual's RFC and whether the individual is "disabled" under the Social Security Act "is reserved to the Commissioner"). While it is true that an ALJ "is not qualified to interpret raw medical data in functional terms," Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008), the ALJ is not precluded from making an RFC finding that differs from assessments contained in medical source statements. The ALJ's RFC finding is an "administrative finding of fact" and "is based on *all of the relevant evidence in the case record*, including information about the individual's symptoms and any 'medical source statements' -- i.e., opinions about what the individual can still do despite his or her impairment(s)-- submitted by an individual's treating source or other acceptable medical sources." SSR 96-8P, 1996 WL 374184, at *2 & n.4 (emphasis added). "Even though the adjudicator's RFC assessment may adopt the opinions in a medical source statement, they are not the same thing[.]" SSR 96-5P, 1996 WL 374183, at *4. "A medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." SSR 96-5P, 1996 WL 374183, at *4. The ALJ did not err merely because he found that plaintiff's RFC fell between the levels posited by the physicians who assessed plaintiff's functional capacity.

**Past relevant work**

Plaintiff contends that the ALJ erred in finding that plaintiff could perform her past relevant work as a touch up screener of printed circuit boards ("touch up screener"). [JS 30-34].

A social security disability claimant bears the burden of proving that she cannot perform either the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto, 249 F.3d at 845 (quoting SSR 82-62); see also Burch, 400 F.3d at 679; Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986). The ALJ's obligation is "to make the requisite factual findings to support" the conclusion that the claimant can perform past relevant work. "This is done by looking at the residual functional capacity

1  and the physical and mental demands of the claimant's past work." Pinto, 249 F.3d at 844-845 (quoting 20

2  C.F.R. §§ 404.1520(e) and 416.920(e)). Information from the Dictionary of Occupational Titles ("DOT"),

3  or the testimony of a vocational specialist, may be used to ascertain the demands of an occupation as

4  ordinarily required by employers throughout the national economy at steps four and five of the sequential

5  evaluation procedure.  See SSR 00-4p, 2000 WL 1898704, *2; Villa, 797 F.2d at 798.

6      The vocational expert testified that plaintiff had past relevant work as a box inspector, selector,

7  electronics inspector, touch up screener, and hair stylist. [AR 25, 72-73, 364].  She testified that plaintiff's

8  past relevant work as a touch up screener corresponds to  DOT job number 726.684-110.[2]  The vocational

9  expert opined that a hypothetical person matching plaintiff's vocational profile with the RFC found by the

10 ALJ could perform that job as generally and actually performed.  The vocational expert also said that her

11 testimony was consistent with information in the DOT. [AR 73-74, 364-369].

12     Plaintiff argues that the vocational expert and the ALJ erroneously classified her past relevant work

13 as that of a touch up screener by relying on the "least demanding function" of that work.  Plaintiff contends

14 that the correct job classification was that of an electronics assembler, which is light work, because "she did

15 more than inspect and perform minor repairs on printed circuit board assemblies. . . . [S]he worked with

16 computer parts in general such as computer chips, towers, and computers . . . ."  [JS 31].

17     Plaintiff's argument fails.  Plaintiff testified that one of her past jobs required her to lift and inspect

18 electronic parts including computers, towers, and chips. [AR 57].  Plaintiff also testified, however, that she

19 held a different job that required her run a machine testing circuit boards that weighed three or four pounds.

20 _____

21     [2]   DOT 726.684-110 describes the duties of a touch up screener as follows:

22     Inspects printed circuit board (PCB) assemblies for defects, such as missing or

23     damaged components, loose connections, or defective solder: Examines PCB's under
       magnification lamp and compares boards to sample board to detect defects. Labels
       defects requiring extensive repairs, such as missing or misaligned parts, damaged

24     components, and loose connections, and routes boards to repairer. Performs minor
       repairs, such as cleaning boards with freon to remove solder flux; trimming long

25     leads, using wire cutter; removing excess solder from solder points (connections),
       using suction bulb or solder wick and soldering iron; or resoldering connections on

26     PCB's where solder is insufficient. Maintains record of defects and repairs to indicate
       recurring production problems. May reposition and solder misaligned components.

27     May measure clearances between board and connectors, using gauges.

28

She said that she spent most of an eight-hour day sitting and "looking through a magnifying glass [at] what [she was] checking" to perform that job. [AR 58].   Therefore, the ALJ did not err in relying on the vocational expert's testimony in finding that plaintiff's past relevant work includes the DOT job of touch up screener, and that the job of touch up screener was sedentary work as both generally and actually performed.

### Remedy

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000).  The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).

The ALJ erred in failing to articulate legally sufficient reasons for rejecting the treating source disability opinion, but since plaintiff acknowledges that Dr. Boyadjian's opinion is not entitled to controlling weight, and since the record is not without ambiguity and conflicts, this case does not present the "rare circumstances" in which departure from the "ordinary remand rule" is warranted.  Treichler v. Colvin, 775 F.3d 1090, 1101-1102, 1104 (9th Cir. 2014) (holding that "the proper approach" is to remand the case for further administrative proceedings when the ALJ "makes a legal error, but the record is uncertain and ambiguous").

### Conclusion

The Commissioner's decision is not based on substantial evidence in the record and is not free of legal error.  Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

November 24, 2015

_____
ANDREW J. WISTRICH
United States Magistrate Judge

9